## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY** ) <br> **AND ETHICS IN WASHINGTON,** ) <br> 455 Massachusetts Ave., N.W. ) <br> Washington, D.C. 20001 ) <br> ) <br> **Freedom From Religion Foundation** ) <br> P.O. Box 750 ) <br> Madison, Wisconsin 53701 ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **U.S. DEPARTMENT OF HOUSING** ) <br> **AND URBAN DEVELOPMENT,** ) <br> 451 7th Street, S.W. ) <br> Washington, D.C. 20410 ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. |

## <u>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF</u>

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for injunctive,

declaratory, and other appropriate relief. Plaintiffs Citizens for Responsibility and Ethics in

Washington ("CREW") and Freedom From Religion Foundation ("FFRF") challenge the pattern

and practice of the U.S. Department of Housing and Urban Development ("HUD") to

purposefully deny fee waivers to non-profit, public interest groups that have satisfied all

statutory and regulatory requirements, in flagrant violation of the FOIA.

2.     This case seeks declaratory relief that HUD is in violation of the FOIA, 5 U.S.C.

§ 552(a)(4)(A), and implementing HUD regulations, 24 C.F.R. § 15.110(h), for repeatedly

failing to grant requests from CREW, FFRF, and other non-profit, public interest organizations

for a waiver of fees associated with processing their requests despite their showings that the subjects of their requests concern the operations of the federal government and the requested disclosures likely will contribute to a better understanding of relevant government procedures by plaintiffs and the general public in a significant way. This case also seeks injunctive relief to compel HUD's compliance with the FOIA's fee waiver provisions and HUD's implementing regulations. CREW further challenges HUD's failure to recognize it as a news media requester for purposes of waiving fees under the FOIA.

### Jurisdiction and Venue

3.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### Parties

4.      Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring the integrity of government officials and agencies. CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under the FOIA.

5.      CREW relies heavily on the FOIA fee waiver provisions because its requests are in the public interest, not in CREW's commercial interest, and concern the operations and/or

activities of the government. CREW is harmed when it is denied a public interest fee waiver under the FOIA, as it faces the choice to either pay the requested fee or incur the financial and resource costs of litigating its entitlement to a fee waiver in order to obtain documents critical to fulfilling its core mission. Similarly, CREW is harmed when agencies fail to recognize its status as a member of the news media for purposes of waiving or reducing fees under the FOIA.

6.      Plaintiff FFRF also is a tax-exempt, non-profit organization under section 501(c)(3) of the Internal Revenue Code. FFRA advocates for the separation of church and state and educates on matters relating to nontheism. FFRF is a membership organization with currently more than 31,000 members, residing in every state of the United States and the District of Columbia. FFRF uses the FOIA to access records necessary to advance its mission.

7.      FFRF also is harmed when it is denied a public interest fee waiver notwithstanding that it seeks documents under the FOIA that are in the public interest, and concern the operations and/or activities of the government. When FFRF's request for a public interest fee waiver is denied, it must either pay the requested fee or incur the financial and resource costs of litigating its entitlement to a fee waiver in order to obtain documents critical to fulfilling its core mission.

8.      Defendant HUD is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 701. Defendant has possession and control of the requested records and is responsible for fulfilling plaintiffs' FOIA requests.

### Statutory and Regulatory Background

9.      The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

3

10.     An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

11.     The FOIA also requires each agency to promulgate regulations that specify a fee schedule for the processing of FOIA requests and establish procedures and guidelines for the waiver or reduction of fees. 5 U.S.C. § 552(a)(4)(A). HUD's fee waiver regulations are found at 24 C.F.R. § 15.106.

12.     Under the FOIA, agencies should produce documents at no charge to the requester or at a reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

13.     HUD's regulations implementing this provision provide that if HUD determines disclosure of the requested information is in the public interest, HUD will furnish the requested records without charge or at a reduced rate. 24 C.F.R. § 15.106(k)(1)(ii).

14.     The FOIA further provides that fees shall be limited for requests made by a representative of the news media, which the statute defines as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). Further, the FOIA defines the term "news" in this context as "information that is about current events or that would be of current interest to the public." *Id.*

15.     Implementing HUD regulations provide that if a requester qualifies as a representative of the news media, HUD will not charge that requester search fees. 24 C.F.R. § 15.106(d)(1). The HUD regulation defines a news media requester as one who "actively gather[s] news for an entity that is organized and operated to publish or broadcast news to the public." 24 C.F.R. § 106(b).

### Factual Background

*CREW FOIA Requests*

16.     On August 22, 2017, *New York Magazine* published an article that described HUD Secretary Ben Carson's family as taking a "visible role in the department." Alex MacGillis, Is Anybody Home at HUD?, *New York Magazine*, Aug. 22, 2017, *available at* http://nymag.com/daily/intelligencer/2017/08/ben-carson-hud-secretary.html. Secretary Carson's wife Candy Carson was described as "omnipresent," reportedly gave an introductory speech on Secretary Carson's first day in office, and according to the article has "been spending far more time inside the department's headquarters at L'Enfant Plaza than anyone could recall a secretary's spouse doing in the past."

17.     The same article also noted that Secretary Carson's second oldest son, Ben ("B.J.") Carson, Jr., also was a commonly-seen figure at HUD. According to the article, Mr. B.J. Carson has been included in email chains within the department and was seen leaving the office of new HUD Chief Operating Officer David Eagles. Mr. B.J. Carson also was described as taking an active role in a visit Secretary Carson made to Baltimore, talking to entrepreneurs at a health fair and introducing them to his father.

18.     Following this article, CREW sent a FOIA request by email to HUD's Freedom of Information Act Office on August 25, 2017, seeking four categories of records ("Carson Family

FOIA"). First, CREW requested copies of all communications from March 6, 2017 to the present between or involving Mrs. Carson and 11 named senior HUD officials. Second, CREW requested copies of all calendars and other records for the same time-period reflecting meetings with Mrs. Carson and these same 11 individuals. Third, CREW requested all communications between March 6 and the present between or involving Mr. B.J. Carson, and these 11 individuals. Fourth, CREW requested copies of all calendars and other records for the same time-period reflecting meetings with Mr. B.J. Carson and these same 11 individuals.

19.     CREW requested a waiver of fees associated with processing this request. As CREW explained in justifying its fee waiver request, the requested records would shed light on the influence that Secretary Carson's family has on HUD priorities and policy decisions, even though they have no official roles in the agency. The requested records also would inform the public about HUD operations. Accordingly, the subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way.

20.     CREW also requested that it not be charged search or review fees because CREW qualifies as a member of the news media. CREW explained the various ways it routinely and systematically disseminates information to the public, including its extensively viewed website on which CREW posts documents it receives under the FOIA, blog posts, and reports.

21.     On August 31, 2017, HUD advised CREW that its request for a fee waiver was denied. Beyond citing the regulatory requirements for a fee waiver and its policy objective of safeguarding the public treasury, HUD offered no rationale for denying the requested fee waiver or analysis of the reasons CREW provided to support its request. Instead, the letter offered the summary conclusion that CREW's request for a fee waiver "is not in the 'public interest' as

required by statute and is therefore denied." Further, HUD evaluated CREW's fee waiver request under 24 C.F.R. § 15.110, even though that regulation has been amended and is now found at 24 C.F.R. § 15.106. HUD did not address CREW's request to be treated as a member of the news media.

22.     On September 6, 2017, CREW appealed HUD's initial fee waiver denial. First, CREW explained specifically how its request concerns the operations or activities of government, given that it seeks documents pertaining to the level of influence close family members of Secretary Carson have on running the agency and making policy decisions. Second, CREW explained how the requested disclosure is likely to contribute to the public's understanding of that level of influence, given that CREW seeks communications and documents regarding meetings between 11 top agency officials and Mrs. Carson and Mr. B.J. Carson, none of which is in the public domain. Third, CREW explained that the requested records not only serve CREW's interests, but also those of the general public, and further that CREW has the proven ability to share the requested information with the public. Fourth, CREW explained how the requested records will contribute significantly to public understanding of HUD activities by providing a wealth of detail on the role and level of influence Mrs. Carson and Mr. B.J. Carson have at HUD.

23.     CREW's appeal also pointed out that HUD had failed to address CREW's request to be treated as a media requester. Further, CREW noted it has been accorded near universal recognition that it qualifies for fee waivers under the FOIA given the nature of its requests and what it does with the requested information.

24.     By letter dated October 6, 2017, HUD advised CREW it was affirming HUD's initial determination that CREW's request fails to meet the criteria for a public interest fee

waiver. As justification for the denial, HUD claimed CREW had "only speculated" that its requested documents "may demonstrate" the level of influence Secretary's wife and son have over agency matters, and faulted CREW for failing to provide "facts to demonstrate how release of this information will 'significantly' increase public understanding of government activities."

25.     As to CREW's request to be treated as a representative of the news media, the letter asserted that issue was not ripe for appeal because the FOIA office had not provided CREW a response.

26.     To date, HUD has not responded to CREW's request to be treated as a representative of the news media.

27.     On September 20, 2017, CREW submitted by facsimile another FOIA request to HUD seeking two categories of records ("Carson Travel FOIA"). First, CREW requested copies of all records concerning authorization for and the costs of Secretary Carson's use of non-commercial aircraft for any official travel since his confirmation on March 2, 2017. Second, CREW requested records sufficient to show the amount of money budgeted for Secretary Carson's travel for 2017 and 2018, and the amount budgeted for the secretary's travel for 2016.

28.     CREW requested a waiver of fees associated with processing this request. As CREW explained in support of this request, recent news reports have focused on the use by agency heads of non-commercial aircraft for official government travel at a cost to taxpayers of thousands of dollars beyond what commercial flights would have cost. CREW also pointed out that Secretary Carson had a very visible role in introducing President Trump at a campaign rally in Phoenix, Arizona, raising questions about whether that trip was government-funded. The requested records will shed light on whether and to what extent Secretary Carson, like other cabinet heads, has broken with practice and similarly used non-commercial aircraft for

government travel. Accordingly, the subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way.

29.     CREW also requested that it not be charged search or review fees because CREW qualifies as a member of the news media. CREW explained the various ways it routinely and systematically disseminates information to the public, including its extensively viewed website, on which CREW posts documents it receives under the FOIA, blog posts, and reports.

30.     One day later, on September 21, 2017, in what appears to be a form letter, HUD advised CREW that its request for a waiver of fees was denied, using language identical to what it used to initially deny CREW a fee waiver in the Carson Family FOIA. As in the Carson Family FOIA, the letter did not address CREW's request to be treated as a member of the news media, and cited to outdated HUD regulations.

31.     By letter dated September 21, 2017, CREW appealed the initial fee waiver denial in the Carson Travel FOIA. First, CREW explained that without question its request concerns the "operations or activities of the government" as it seeks to learn whether Secretary Carson is using non-commercial aircraft for official HUD business travel. How Secretary Carson and HUD spend taxpayer funds could not be more relevant to this issue. Second, CREW explained that given the considerable public focus on other cabinet officials who have used private government aircraft in circumstances suggesting non-compliance with governing policies and regulations, the requested records are "likely to contribute" to the public's understanding of Secretary Carson's travel. CREW noted that given the call for investigations into the use by other cabinet heads of non-commercial aircraft for official government travel, to call the subject of CREW's request not in the public interest is nothing short of absurd. Third, CREW explained that because little

currently is known about Secretary Carson's use of non-commercial flights for travel, the records CREW has requested will fill in the gap and therefore will contribute "significantly" to public understanding of HUD activities and how the agency operates.

32.     CREW's appeal also pointed out that HUD had failed to address CREW's request to be treated as a media requester. Further, CREW noted it has been accorded near universal recognition that it qualifies for fee waivers under the FOIA given the nature of its requests and what it does with the requested information.

33.     On October 13, 2017, while CREW's appeal in the Carson Travel FOIA was pending, HUD advised CREW the agency had determined CREW falls into the "other use requester" category. HUD further advised that the estimated cost for processing CREW's request was approximately $251.80, and that if the agency did not receive payment from CREW within 15 days or a more narrowly drawn request, CREW's request would be considered "withdrawn."

34.     CREW responded in an email dated October 13, 2017, advising HUD of its pending administrative appeal and asking that HUD refrain from taking any action to treat CREW's request as withdrawn until HUD resolves the appeal.

35.     HUD responded to this email on October 13, 2017, advising CREW its request would remain open until November 3rd, which HUD represented "provides enough time for the appeal decision to be rendered." HUD subsequently clarified that if the appeal was not decided by that date, CREW's request would remain open.

36.     On October 24, 2017, HUD advised CREW it was affirming HUD's initial determination to deny CREW a fee waiver in the Carson Travel FOIA. The agency's explanation for the denial was a single sentence stating CREW's showing "does not satisfy the criteria and is conclusory."

37.     As to CREW's request to be treated as a representative of the news media, the letter asserted that issue was not ripe for appeal because the FOIA office had not provided CREW a response.

38.     To date, HUD has not responded to CREW's request to be treated as a representative of the news media.

*FFRF FOIA Requests*

39.     On August 7, 2017, FFRF, using HUD's on-line submission form, submitted a FOIA request seeking three categories of records ("CM FOIA"). First, FFRF requested correspondence, including emails, between representatives of Capitol Ministries ("CM"), a section 501(c)(3) non-profit organization whose vision is "to evangelize elected officials and lead them toward maturity in Christ," and any representative of HUD, including Secretary Carson, since January 1, 2017. Second, FFRF requested internal correspondence between HUD representatives since January 1 regarding the weekly bible study that Secretary Carson sponsors and that Trump cabinet members attend, and/or CM. Third, FFRF requested copies of Secretary Carson's daily schedules that include any cabinet bible study since January 1, 2017.

40.     FFRF also requested a waiver of fees, explaining it is a registered section 501(c)(3) non-profit organization and the release of the requested records is in the public interest, given that the subject of its request is a matter of concern to FFRF's over 29,000 members nationwide, HUD personnel, and the public.

41.     On August 7, 2017, the same day HUD received FFRF's FOIA request, HUD notified FFRF its request for a fee waiver was denied for failing to meet three of the four regulatory criteria for a fee waiver. HUD offered no analysis beyond the following: "You state

that fees should be waived because of your nonprofit status and because release of the records is in the public interest. Your request for a fee waiver is denied."

42.     In a detailed, four-page letter dated August 11, 2017, FFRF appealed HUD's denial of its requested fee waiver. FFRF's letter devoted three paragraphs to explaining how the requested documents are likely to contribute to an understanding of specific government activities or operations. Among other things, FFRF pointed out that the requested records concern a weekly bible study sponsored and attended by Trump administration cabinet members that may reveal critical information about whether the administration is complying with constitutional requirements, specifically the Establishment Clause of the First Amendment. Further, disclosure will also contribute to an understanding of the influence of an outside organization on government and Secretary Carson's actions. FFRF explained how the requested information relates directly to the operations of government, as interpreted by the courts.

43.     FFRF's letter devoted one and one-half pages to discussing how the disclosure will contribute to a greater understanding on the part of the public at large, detailing how the subject matter of its FOIA request and FFRF's opposition have received widespread media coverage. FFRF further explained that the requested information is not currently publicly available, and detailed the organization's channels of communication to reach millions of citizens.

44.     FFRF's appeal also discussed how disclosure of the requested documents will contribute significantly to the public's understanding of government activities or operations by aiding the public in understanding how top officials in the federal government are using (or misusing) federal resources for regular bible study meetings. As FFRF explained, there are few things more important and valuable than public oversight of our secular government. Finally,

FFRA pointed out that the request form on HUD's Freedom of Information Act Public Access Website limits responses to 255 characters, which is an inadequate amount of space to fully explain the four criteria HUD uses to determine fee waivers.

45.     By letter dated September 11, 2017, HUD advised FFRF that its appeal was denied. The sole ground HUD offered for the denial was that FFRF was seeking documents that do not relate to HUD operations or activities.

46.     On October 26, 2017, FFRF filed another FOIA request with HUD seeking: (1) correspondence, including emails to or from any representative of HUD, including Secretary Carson, regarding the "Revive Us 2" event Secretary Carson attended at the Museum of the Bible on October 24, 2017, and (2) Secretary Carson's daily schedule from October 24 ("Revive Us 2 FOIA").

47.     FFRF also requested a fee waiver for its Revive Us 2 FOIA because the subject of the request is a matter of concern to FFRF members, HUD personnel, and the public.

48.     One day later, on October 27, 2017, HUD advised FFRF that its fee waiver request was denied stating only that FFRF had failed to meet the agency's fee waiver criteria.

49.     By letter dated December 8, 2017, FFRF appealed HUD's denial of its requested fee waiver. FFRF first noted that HUD had failed to provide a reason for the denial beyond the conclusory statement FFRF had failed to meet the applicable criteria.

50.     FFRF then addressed each of the criteria, explaining in detail how its request satisfies each. First, FFRF explained how its request directly concerns Secretary Carson's operations and activities in his official capacity as a HUD representative. Second, FFRF explained that the requested documents will contribute significantly to public understanding of whether the government is complying with the Establishment Clause of the First Amendment,

and contribute to greater understanding of HUD's involvement in the "Revive Us 2" event, including who attended, if staff were pressured into attending, and if staff time and government resources were spent organizing the event. Third, FFRF explained the significant public interest in the subject matter of its request, the fact that the requested information is not publicly available, and FFRF's numerous channels of communication to reach millions of citizens. Fourth, FFRF explained how disclosing the requested records will contribute significantly to the public's understanding of government activities or operations given the vital public interest in knowing if Secretary Carson is complying with the Constitution's requirements.

51.     FFRF also noted in its appeal that the FOIA request form on HUD's Freedom of Information Act Public Access Website, which FFRF used to submit the Revive Us 2 FOIA, does not provide enough space to those who request fee waivers to adequately explain their case.

52.     By letter dated January 9, 2018, HUD advised FFRF that its appeal was denied. Despite FFRF's showing that it has several channels of communication to reach millions of citizens, HUD denied the requested fee waiver on the ground that FFRF had failed to mention how it would disseminate to a broad audience outside of its organization. HUD also claimed FFRF's identification of the public interest to be served was conclusory and denied the fee waiver request on that basis as well.

*Other HUD Denials of Fee Waivers*

53.     Plaintiffs are aware of two other public interest non-profit organizations whose requests for public interest fee waivers were denied by HUD under similar circumstances. On May 15, 2017, the American Society for the Prevention of Cruelty to Animals ("ASPCA") sued HUD under the FOIA for failing to grant the organization's fee waiver request. *The American*

14

*Society for the Prevention of Cruelty to Animals v. U.S. Dep't of Housing and Urban Development*, Civil No. 17-cv-00912 (RDM) (D.D.C.).

54.     As outlined in the complaint, that case involved a FOIA request the ASPCA filed with HUD for records related to HUD's Moving to Work demonstration program, and its policy of exempting housing authorities participating in the program from federal laws and regulations permitting residents to have pets. The ASPCA sought the information to educate its supporters and the public about federal housing policies that impact the availability of pet-friendly housing.

55.     HUD initially denied the requested public interest fee waiver on the ground that the ASPCA had asserted only "conclusory statements" and had failed to identify the public interest disclosure of the requested documents would serve.

56.     The ASPCA filed an administrative appeal from this denial, explaining in multiple pages why its FOIA request met each criterion for entitlement to a public interest fee waiver. The ASPCA detailed the size of the organization, the depth and breadth of its staff's knowledge on issues of pet retention and public education, and the organization's wide range of public outlets.

57.     Notwithstanding this detailed showing, HUD denied the appeal on the ground that the ASPCA had failed to show that disclosure of the requested documents would contribute to an understanding of the subject by a reasonably broad audience. Subsequently, HUD sent the ASPCA a letter estimating the fee to be $7,862.40.

58.     After following up with HUD about the denial and acting on a recommendation from HUD FOIA staff, the ASPCA filed a new FOIA request seeking the same documents it had sought in its initial FOIA request. As with its first request, the ASPCA sought a fee waiver. This time, however, it made the fee waiver request separately in a document that included six

numbered sections compromising 15 paragraphs of explanation as to why it satisfied each of the fee waiver criteria.

59.     The following week, HUD again issued a cursory denial that did not address the ASPCA's showing, stating instead that the request did not address how the organization met any of the criteria.

60.     The ASPCA appealed this determination in a letter that included a six-part legal analysis structured specifically around HUD's FOIA regulations. While each criterion was discussed and applied in depth, the appeal devoted particular attention to explaining how the disclosure should contribute to the understanding of "a reasonably broad audience of persons interested in the subject."

61.     In addition to providing an extensive factual basis to support its requested fee waiver, the ASPCA's appeal contained extensive citations to case law that contradicted HUD's analysis of the fee waiver issue.

62.     Despite this exhaustive legal and factual showing, HUD denied the second appeal, claiming the ASPCA had failed to demonstrate it could "contribute to an understanding of the public at large." HUD further claimed that even if the ASPCA routinely secures national media coverage, it ultimately is up to the media to decide what to report. Further, HUD stated the ASPCA had not demonstrated an intent or ability to distribute the requested information to a reasonably broad audience. Finally, HUD attempted to distinguish one of the cases on which the ASPCA had relied with a factual claim lacking any data or evidence. Subsequently, HUD assessed a fee of $5,662 for processing the requested records.

63.     After the ASPCA filed its complaint, HUD sought an extension of its time to respond, stating that HUD had informed the ASPCA "that it should not have assessed any fee for

Plaintiff's FOIA request," and promising to provide responsive records by June 16, 2017. On July 20, 2017, the ASPCA filed a notice of voluntary dismissal.

64.     Additionally, Public Citizen filed a complaint against HUD on December 4, 2017, challenging HUD's failure to grant Public Citizen a fee waiver, *Public Citizen, Inc. v. U.S. Dep't of Housing and Urban Development*, Civil No. 17-2582 (RC) (D.D.C.). There, Public Citizen is challenging HUD's denial of a fee waiver on the ground that the organization had failed to show that the public interest would be served by disclosure of the requested documents.

65.     As outlined in its complaint, Public Citizen's suit stems from a FOIA request it submitted to HUD on September 22, 2017 for documents related to the cost of travel and personal security for Secretary Carson and former HUD Secretary Shaun Donovan for designated time periods.

66.     In the limited space available on HUD's online form, Public Citizen justified its request for a full waiver of fees based on the fact that the requested records will contribute to the public's understanding of government spending under the Trump Administration. Public Citizen also explained it has over 400,000 members and supporters.

67.     On September 25, 2017, one business day after Public Citizen submitted its request, HUD denied the requested fee waiver on the ground that Public Citizen had not adequately shown disclosure of the requested records would serve the public interest.

68.     Public Citizen appealed HUD's fee waiver denial, explaining that HUD had failed to comply with the law because it failed to state a specific reason for its denial, and had applied the wrong legal standard. Public Citizen also described with specificity how its request satisfies HUD's regulatory criteria for a fee waiver.

69.     Notwithstanding this showing, HUD affirmed its earlier denial of the requested

fee waiver solely on the ground that the organization had failed to show disclosure of the

requested documents will contribute significantly to the public's understanding of government

activities or operations. With no analysis, HUD stated that Public Citizen's showing on this

factor "does not satisfy the criteria and is conclusory."

70.     HUD has been granted an extension to respond to Public Citizen's complaint, and

its answer currently is due February 5, 2018.

## PLAINTIFFS' CLAIMS FOR RELIEF

### CLAIM ONE
**(Impermissible Policy, Pattern and Practice of Denying Fee Waivers to Public Interest
Organizations in Violation of the Freedom of Information Act)**

71.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

72.     Defendant has adopted and is engaged in a policy and practice of violating the

FOIA's fee waiver provisions, 5 U.S.C. § 552(a)(4)(A), by intentionally refusing to grant fee

waivers to non-profit, public interest organizations that satisfy all the statutory and regulatory

criteria for a public interest fee waiver.

73.     As part of defendant's unlawful policy and practice, defendant makes an initial

decision to deny requested public interest fee waivers from non-profit requesters shortly after

receiving the requests, using boilerplate language and failing to address the showings the

requesters make as to why they are entitled to a fee waiver.

74.     As part of defendant's unlawful policy and practice, the agency affirms these

denials on appeal in broad conclusory terms that fail to address the detailed showings the

requesters make demonstrating their entitlement to a public interest fee waiver.

75.     Defendant's repeated failure to properly implement the FOIA's fee waiver provisions are not attributable to factual differences in the showings made by non-profit, public interest requesters in support of their fee waiver requests.

76.     As part of their unlawful policy and practice, defendants deny public interest fee waivers where disclosure of the requested documents is likely to cast the agency or HUD Secretary Ben Carson in a negative light.

77.     Defendant's repeated, unlawful, and intentional actions have resulted, and will continue to result, in the untimely access to documents to which the plaintiffs and the public are entitled.

78.     Defendant's repeated, unlawful, and intentional actions in violation of the FOIA and HUD implementing regulations have harmed and will continue to harm plaintiffs by requiring them to either pay processing fees notwithstanding their statutory entitlement to a fee waiver or incur the costs and delay associated with litigating their entitlement to a fee waiver.

79.     Defendant's unlawful policy or practice of denying fee waivers to non-profit, public interest requesters who have satisfied the fee waiver requirements will continue absent intervention by this Court.

80.     Plaintiffs therefore are entitled to injunctive and declaratory relief to compel defendant to comply with the fee waiver provisions of the FOIA and to prevent defendant from continuing to apply its unlawful FOIA practice or policy.

## CLAIM II
### (Improper Denial of CREW's requested fee waivers)

81.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

82.     In both the Carson Family FOIA and the Carson Travel FOIA, CREW demonstrated that it is entitled to a waiver of fees associated with processing its FOIA requests,

because disclosure of responsive records will likely contribute to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of CREW.

83.     Notwithstanding this entitlement, HUD denied CREW's administrative appeals and upheld HUD's initial determinations that CREW is not entitled to a waiver of fees, contrary to the FOIA and HUD regulations.

84.     Plaintiff CREW therefore is entitled to injunctive and declaratory relief granting it a fee waiver in both the Carson Family FOIA and the Carson Travel FOIA.

## CLAIM III
### (Improper Denial of FFRFs requested fee waivers)

85.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

86.     In both the CM FOIA and the Revive Us 2 FOIA submitted by FFRF to HUD, FFRF demonstrated that it is entitled to a waiver of fees associated with processing its FOIA requests, because disclosure of responsive records will likely contribute to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of FFRF.

87.     Notwithstanding this entitlement, HUD denied FFRF's requested fee wavers, contrary to the FOIA and HUD regulations.

88.     Plaintiff FFRF therefore is entitled to injunctive and declaratory relief granting it a fee waiver in both the CM FOIA and the Revive Us 2 FOIA.

## CLAIM IV
### (Improper Denial of Media Requester Status to CREW)

89.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

90.    CREW has demonstrated it is entitled to a fee waiver because it qualifies as a member of the news media.

91.    Notwithstanding this showing, HUD has refused to accord CREW news media status and waive or reduce its liability for fees associated with processing its FOIA requests.

92.    Defendant's failure to grant CREW news media status has harmed and will continue to harm CREW by requiring it to either pay processing fees notwithstanding its statutory entitlement to a fee waiver or incur the costs and delay associated with litigating its entitlement to a fee waiver as a news media requester.

93.    Plaintiff CREW therefore is entitled to injunctive and declaratory relief granting it news media status for purposes of the FOIA's fee waiver provisions.

## REQUESTED RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

(1) Declare that HUD is engaged in an impermissible practice or policy of refusing to grant public interest fee waivers to non-profit, public interest organizations that have satisfied all statutory and regulatory criteria for a fee waiver;

(2) Enjoin HUD from continuing to engage in an impermissible practice or policy of refusing to grant public interest fee waivers to non-profit, public interest organizations that have satisfied all statutory and regulatory criteria for a fee waiver;

(3) Declare that plaintiff CREW is entitled to a full fee waiver for its Carson Family and Carson Travel FOIA requests submitted to HUD;

(4) Order HUD to grant CREW a full fee waiver for both its FOIA requests;

(5) Declare that plaintiff FFRF is entitled to a full fee waiver for its FOIA requests submitted to HUD;

(6) Order HUD to grant FFRF a full fee waiver for its CM and Revive Us2 FOIA requests;

(7) Declare that plaintiff CREW is entitled to be treated as a news media requester for purposes of processing its FOIA requests;

(8) Order HUD to grant CREW news media requester status for purposes of processing its FOIA requests;

(9) Provide for expeditious proceedings in this action;

(10) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(11) Award plaintiffs their costs and reasonable attorneys' fees in this action; and

(12) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and Ethics
    in Washington
455 Massachusetts Ave., N.W.
Washington, D.C.  20001
Phone: (202) 408-5565
Facsimile: (202) 588-5020

*Attorney for Citizens for Responsibility and Ethics in Washington*

Patrick C. Elliott (*Pro Hac Vice* pending)
Freedom From Religion Foundation, Inc.
10 N. Henry St.
Madison, WI 53703
Phone: (608) 256-8900
Facsimile: (608) 204-0422

Dated:  January 18, 2018

*Attorney for Freedom From Religion Foundation*