# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CITIZENS FOR RESPONSIBILITY**
**AND ETHICS IN WASHINGTON**,

**FREEDOM FROM RELIGION**,

     Plaintiffs,

     v.

**U.S. DEPARTMENT OF HOUSING**
**AND URBAN DEVELOPMENT**,

     Defendant.

Civil No. 18-cv-0114 (KBJ)

# PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATUTORY AND REGULATORY BACKGROUND ............................................................. 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ...................................................................................................................... 17

   I.     Standard of Review. ........................................................................................... 17

   II.    Plaintiffs' Claims Are Not Moot. ....................................................................... 18

   III.   Claim I States a Claim That HUD Has Engaged in a Patten and Practice of Improperly Denying Public Interest Fee Waivers to Public Interest Groups. ................................... 20

CONCLUSION .................................................................................................................... 26

## **TABLE OF AUTHORITIES**

*Cases*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 18

*Boritz v. United States*, 685 F. Supp. 2d 113 (D.D.C. 2010) ..................................... 17

*Cause of Action v. Eggleston*, 224 F. Supp. 3d 63 (D.D.C. 2016) .............................. 25

*Citizens for Responsibility & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194 (D.D.C.

    2009) ..................................................................................................................... 17

*Hall v. CIA*, 437 F.3d 94 (D.C. Cir. 2006) .................................................................. 19

*Houser v. Church*, 271 F. Supp. 3d 197 (D.D.C. 2017) .............................................. 19

*Hurd v. Dist. of Columbia*. 864 F.3d 671 (D.C. Cir. 2017) .................................... 18, 21

*Long v. IRS*, 693 F.2d 907 (9th Cir. 1982) ................................................................. 23

*Muckrock, LLC v. CIA*, No. 14-cv-997 (KBJ), 2018 WL 1129713 (D.D.C. Feb. 28, 2018) ........ 23

*Muttit v. U.S. Cent. Command*, 813 F. Supp. 2d 221 (D.D.C. 2011) .................................... 24, 25

*Nat'l Harbor GP, LLC v. Gov't of D.C.*, 121 F. Supp. 3d 11 (D.D.C. 2015).............................. 17

*Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) .............................. 18, 23

*Public Citizen, Inc. v. U.S. Dep't of Housing and Urban Development*, Civil No. 17-2582 (RC)

    (D.D.C.) ................................................................................................................ 17

*The American Soc'y for the Prevention of Cruelty to Animals v. U.S. Dep't of Housing and*

    *Urban Development*, Civil No. 17-cv-00912 (RDM) (D.D.C.).............................. 15

*Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359 (D.C. Cir. 2005)................................. 18

*Statutes and Regulations*

5 U.S.C. § 552(a)(4)(A) ............................................................................................... 2

5 U.S.C. § 552(a)(4)(A)(ii) ......................................................................................... 3

5 U.S.C. § 552(a)(4)(A)(iii) ............................................................................................... 2, 26

24 C.F.R. § 15.106 ............................................................................................................. 2, 5

24 C.F.R. § 15.106(b) ........................................................................................................... 3

24 C.F.R. § 15.106(d)(2) ....................................................................................................... 3

24 C.F.R. §§ 15.106(i)(2)(i)-(iv) ........................................................................................... 2

24 C.F.R. § 15.106(k)(1)(ii) .................................................................................................. 2

24 C.F.R. § 15.110 ............................................................................................................... 5

***Rules***

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 17

Fed. R. Civ. P. 12(b)(6) ................................................................................................ passim

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** | ) | |
| | ) | |
| **FREEDOM FROM RELIGION, FOUNDATION,** | ) | |
| | ) | |
| Plaintiffs,      ` | ) | |
| | ) | |
| v. | ) | Civil No. 18-cv-0114 (KBJ) |
| | ) | |
| **U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Despite extensive public focus on the behavior of U.S. Department of Housing and Urban Development ("HUD") Secretary Ben Carson, including revelations about the questionable role his family has played in agency business, his lavish spending, and his apparent disregard for the rules and norms governing public service, HUD insists in this lawsuit it properly denied a host of fee waiver requests under the Freedom of Information Act ("FOIA") from public interest groups seeking to shed further light on Secretary Carson's actions. HUD asks this Court to ignore the detailed, 22-page complaint spelling out the substantial evidence that HUD has engaged in an unlawful pattern and practice of improperly denying fee waivers to plaintiffs and other non-profit organizations, most likely to avoid disclosure of potentially embarrassing information. HUD asks this Court to instead accept its as yet unfulfilled promise that it will, at some unidentified time, provide plaintiffs with still unidentified documents, and to ignore its past pattern of behavior

with no evidence or assurance such behavior will not be repeated. As set forth below, these arguments, which form the basis of defendant's motion to dismiss, suffer from fatal flaws on both procedural and substantive grounds and must be rejected.

## STATUTORY AND REGULATORY BACKGROUND

The FOIA dictates that agencies are to produce documents at no charge to the requester or at a reduced charge "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The statute also requires agencies to promulgate regulations that specify a fee schedule for the processing of FOIA requests and establish procedures and guidelines for the waiver or reduction of fees. 5 U.S.C. § 552(a)(4)(A).

HUD's fee waiver regulations, found at 24 C.F.R. § 15.106, mirror these requirements. Specifically, they provide that if HUD determines disclosure of the requested information is in the public interest, HUD will furnish the requested records without charge or at a reduced rate. 24 C.F.R. § 15.106(k)(1)(ii). To make that determination, HUD regulations explain that HUD will consider four factors or directives:

(1) whether the subject of the request "concern[s] identifiable operations or activities of the Federal Government, with a connection that is direct and clear, not remote or attenuated";

(2) the records that are disclosed "should be meaningfully informative about government operations or activities and 'likely to contribute' to an increased public understanding of those operations or activities"; information already in the public domain is less "likely to contribute to such increased

understanding";

(3) disclosure "should contribute to the understanding of a reasonably broad audience of persons interested in the subject," considering the "requester's expertise in the subject area and ability and intention to effectively convey information to the public"; and

(4) disclosure should enhance "to a significant degree" public "understanding of the subject in question," although "HUD will not make value judgments about whether information at issue is 'important' enough to be made public."

24 C.F.R. §§ 15.106(i)(2)(i)-(iv).

The FOIA also requires that fees be limited for requests made by a representative of the news media, which the statute defines as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). The statute defines "news" in this context as "information that is about current events or that would be of current interest to the public." *Id.*

Implementing HUD regulations provide that if a requester qualifies as a representative of the news media, HUD will not charge that requester search fees. 24 C.F.R. § 15.106(d)(2). They further define a news media requester as one who "actively gather[s] news for an entity that is organized and operated to publish or broadcast news to the public." 24 C.F.R. § 15.106(b).

## **FACTUAL BACKGROUND**

### *Citizens for Responsibility and Ethics in Washington ("CREW") FOIA Requests*

On August 22, 2017, *New York Magazine* published an article describing Secretary Carson's family as taking a "visible role in the department." Alex MacGillis, Is Anybody Home

3

at HUD?, *New York Magazine*, Aug. 22, 2017, *available at* http://nymag.com/daily/intelligencer/2017/08/ben-carson-hud-secretary.html. The article described Secretary Carson's wife Candy Carson as "omnipresent," reported that she gave an introductory speech on Secretary Carson's first day in office, and said Mrs. Carson has "been spending far more time inside the department's headquarters at L'Enfant Plaza than anyone could recall a secretary's spouse doing in the past." *Id.*

The same article also noted that Secretary Carson's second oldest son, Ben ("B.J.") Carson, Jr., also was a commonly-seen figure at HUD. *Id.* According to the article, Mr. B.J. Carson has been included in email chains within the department and was seen leaving the office of new HUD Chief Operating Officer David Eagles. *Id.* Mr. B.J. Carson also was described as taking an active role in a visit Secretary Carson made to Baltimore, talking to entrepreneurs at a health fair and introducing them to his father. *Id.*

Following this article, CREW sent a FOIA request by email to HUD's Freedom of Information Act Office on August 25, 2017, seeking four categories of records (the "Carson Family FOIA"). First, CREW requested copies of all communications from March 6, 2017 to the present between or involving Mrs. Carson and 11 named senior HUD officials. Second, CREW requested copies of all calendars and other records for the same time-period reflecting meetings between Mrs. Carson and these same 11 individuals. Third, CREW requested all communications between March 6 and the present between or involving Mr. B.J. Carson and these 11 individuals. Fourth, CREW requested copies of all calendars and other records for the same time-period reflecting meetings between Mr. B.J. Carson and these same 11 individuals. Complaint ("Compl.") ¶ 18.[1]

---

[1] This request is Exhibit 11 to Defendant's Memorandum in Support of Motion to Dismiss ("D's Mem."), Dkt. 13-13.

CREW requested a waiver of fees associated with processing this request. As CREW explained in justifying its fee waiver request, the requested records would shed light on the influence that Secretary Carson's family has on HUD priorities and policy decisions, even though they have no official roles in the agency. The requested records also would inform the public about HUD operations. Accordingly, CREW explained, the subject of the request concerned the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Compl. ¶ 19.

CREW also requested that it not be charged search or review fees because CREW qualifies as a member of the news media. CREW explained the various ways it routinely and systematically disseminates information to the public, including its extensively viewed website on which CREW posts documents it receives under the FOIA, blog posts, and reports. Compl. ¶ 20.

Notwithstanding this showing, on August 31, 2017, HUD advised CREW its request for a fee waiver was denied. Beyond citing the regulatory requirements for a fee waiver and its policy objective of safeguarding the public treasury, HUD offered no rationale for the denial or analysis of the reasons CREW provided to support its fee waiver request. Instead, the letter summarily concluded that CREW's request for a fee waiver "is not in the 'public interest' as required by statute and is therefore denied." Further, HUD evaluated CREW's fee waiver request under 24 C.F.R. § 15.110, even though that regulation has been amended and is now found at 24 C.F.R. § 15.106. *Id.* HUD did not address at all CREW's request to be treated as a member of the news media. Compl. ¶ 21.[2]

---

[2] HUD's letter is Exhibit 13 to D's Mem., Dkt. 13-15.

On September 6, 2017, CREW appealed HUD's initial fee waiver denial. First, CREW explained specifically how its request concerns the operations or activities of government, given that it seeks documents pertaining to the level of influence close family members of Secretary Carson have on running the agency and making policy decisions. Second, CREW explained how the requested disclosure is likely to contribute to the public's understanding of that level of influence, given that CREW seeks communications and documents regarding meetings between 11 top agency officials and Mrs. Carson and Mr. B.J. Carson, none of which is in the public domain. Third, CREW explained how the requested records not only serve CREW's interests, but also those of the general public, and further that CREW has the proven ability to share the requested information with the public. Fourth, CREW explained how the requested records will contribute significantly to public understanding of HUD activities by providing a wealth of detail on the role and level of influence Mrs. Carson and Mr. B.J. Carson have at HUD. Compl. ¶ 22.[3]

CREW's appeal also pointed out that HUD had failed to address CREW's request to be treated as a media requester. Further, CREW noted it has been accorded near universal recognition that it qualifies for fee waivers under the FOIA given the nature of its requests and what it does with the requested information. Compl. ¶ 23.

By letter dated October 6, 2017, HUD advised CREW it was affirming HUD's initial determination that CREW's request fails to meet the criteria for a public interest fee waiver. As justification for the denial, HUD claimed CREW had "only speculated" that its requested documents "may demonstrate" the level of influence Secretary's wife and son have over agency matters, and faulted CREW for failing to provide "facts to demonstrate how release of this information will 'significantly' increase public understanding of government activities." Compl.

---

[3] Because CREW's appeal was omitted as an exhibit to defendant's motion to dismiss, it is attached as Exhibit A.

¶ 24. As to CREW's request to be treated as a representative of the news media, the letter asserted that issue was not ripe for appeal because the FOIA office had not provided CREW a response. Compl. ¶ 25. To date, HUD has not responded to CREW's request to be treated as a representative of the news media. Compl, ¶ 26.[4]

On September 20, 2017, CREW submitted by facsimile another FOIA request to HUD seeking two categories of records (the "Carson Travel FOIA"). First, CREW requested copies of all records concerning authorization for and the costs of Secretary Carson's use of non-commercial aircraft for any official travel since his confirmation on March 2, 2017. Second, CREW requested records sufficient to show the amount of money budgeted for Secretary Carson's travel for 2017 and 2018, and the amount budgeted for the HUD secretary's travel for 2016. Compl. ¶ 27.[5]

In this second request CREW also requested a waiver of fees associated with processing the request. As CREW explained in support of this request, recent news reports had focused on the use by agency heads of non-commercial aircraft for official government travel at a cost to taxpayers of thousands of dollars beyond what commercial flights would have cost. CREW also pointed out that Secretary Carson had a very visible role in introducing President Trump at a campaign rally in Phoenix, Arizona, raising questions about whether that trip was government-funded. CREW further noted the requested records will shed light on whether and to what extent Secretary Carson, like other cabinet heads, had broken with past practice and similarly used non-commercial aircraft for government travel. Accordingly, CREW explained, the subject of the request concerned the operations of the federal government, and the disclosures likely will

---

[4] HUD's letter is Exhibit 15 to D's Mem., Dkt. 13-17.
[5] This request is Exhibit 12 to D's Mem., Dkt. 13-14.

contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Compl. ¶ 28.

CREW also requested that it not be charged search or review fees because CREW qualifies as a member of the news media. CREW explained the various ways it routinely and systematically disseminates information to the public, including its extensively viewed website, on which CREW posts documents it receives under the FOIA, blog posts, and reports. Compl. ¶ 29.

One day later, on September 21, 2017, in what appears to be a form letter, HUD advised CREW its request for a waiver of fees was denied, using language identical to what it used to initially deny CREW a fee waiver in the Carson Family FOIA. As in the Carson Family FOIA, the letter did not address CREW's request to be treated as a member of the news media, and cited to outdated HUD regulations. Compl. ¶ 30.[6]

By letter dated September 21, 2017, CREW appealed the initial fee waiver denial in the Carson Travel FOIA. First, CREW explained that without question its request concerns the "operations or activities of the government" as it seeks to learn whether Secretary Carson is using non-commercial aircraft for official HUD business travel. How Secretary Carson and HUD spend taxpayer funds could not be more relevant to this issue. Second, CREW explained that given the considerable public focus on other cabinet officials who have used private government aircraft in circumstances suggesting non-compliance with governing policies and regulations, the requested records are "likely to contribute" to the public's understanding of Secretary Carson's travel. CREW noted that given the call for investigations into the use by other cabinet heads of non-commercial aircraft for official government travel, to call the subject of CREW's request not

---

[6] HUD's letter is Exhibit 14 to D's Mem., Dkt. 13-16.

in the public interest is nothing short of absurd. Third, CREW explained that because little currently is known about Secretary Carson's use of non-commercial flights for travel, the records CREW requested will fill in the gap and therefore will contribute "significantly" to public understanding of HUD activities and how the agency operates. Compl. ¶ 31.[7]

CREW's appeal also pointed out that HUD had failed to address CREW's request to be treated as a media requester. Further, CREW noted it has been accorded near universal recognition that it qualifies for fee waivers under the FOIA given the nature of its requests and what it does with the requested information. Compl. ¶ 32.

On October 13, 2017, while CREW's appeal in the Carson Travel FOIA was pending, HUD advised CREW the agency had determined CREW falls into the "other use requester" category. HUD further advised that the estimated cost for processing CREW's request was approximately $251.80, and that if the agency did not either receive payment from CREW within 15 days or a more narrowly drawn request, CREW's request would be considered "withdrawn." Compl. ¶ 33. CREW responded in an email dated October 13, 2017, advising HUD of its pending administrative appeal and asking that HUD refrain from taking any action to treat CREW's request as withdrawn until HUD resolved the appeal. Compl. ¶ 34. On October 13, 2017, HUD advised CREW by email its request would remain open until November 3rd, which HUD represented "provides enough time for the appeal decision to be rendered." HUD subsequently clarified that if the appeal was not decided by that date, CREW's request would remain open. Compl. ¶ 35.

On October 24, 2017, HUD advised CREW it was affirming HUD's initial determination to deny CREW a fee waiver in the Carson Travel FOIA. The agency's explanation for the denial

---

[7] Because CREW's appeal is omitted as an exhibit to defendant's motion to dismiss, it is attached as Exhibit B.

was a single sentence stating CREW's showing "does not satisfy the criteria and is conclusory." Compl. ¶ 36.[8] As to CREW's request to be treated as a representative of the news media, the letter asserted that issue was not ripe for appeal because the FOIA office had not provided CREW a response. *Id.* To date, HUD has not responded to CREW's request to be treated as a representative of the news media.

<u>*Freedom From Religion Foundation ("FFRF") FOIA Requests*</u>

On August 7, 2017, FFRF, using HUD's on-line submission form, submitted a FOIA request seeking three categories of records ("CM FOIA"). First, FFRF requested correspondence, including emails, between representatives of Capitol Ministries ("CM"), a section 501(c)(3) non-profit organization whose stated vision is "to evangelize elected officials and lead them toward maturity in Christ," and any representative of HUD, including Secretary Carson, since January 1, 2017. Second, FFRF requested internal correspondence between HUD representatives since January 1, 2017 regarding the weekly bible study that Secretary Carson sponsors and that Trump cabinet members attend, and CM. Third, FFRF requested copies of Secretary Carson's daily schedules that include any cabinet bible study since January 1, 2017. Compl. ¶ 39.[9]

FFRF also requested a waiver of fees, explaining it is a registered section 501(c)(3) non-profit organization and the release of the requested records is in the public interest, given that the subject of its request is a matter of concern to FFRF's over 29,000 members nationwide, HUD personnel, and the public. Compl. ¶ 40.

On August 7, 2017, the same day HUD received FFRF's FOIA request, HUD notified FFRF its request for a fee waiver was denied for failing to meet three of the four regulatory criteria for a fee waiver. HUD offered no analysis beyond the following: "You state that fees

---

[8] HUD's letter is Exhibit 16 to D's Mem., Dkt. 13-18.
[9] This request is Exhibit 5 to D's Mem., Dkt. 13-7.

should be waived because of your nonprofit status and because release of the records is in the public interest. Your request for a fee waiver is denied." Compl. ¶ 41.[10]

In a detailed, four-page letter dated August 11, 2017, FFRF appealed HUD's denial of its requested fee waiver. FFRF's letter devoted three paragraphs to explaining how the requested documents are likely to contribute to an understanding of specific government activities or operations. Among other things, FFRF pointed out that the requested records concern a weekly bible study sponsored and attended by Trump administration cabinet members that may reveal critical information about whether the administration is complying with constitutional requirements, specifically the Establishment Clause of the First Amendment. Further, FFRF said, disclosure will also contribute to an understanding of the influence of an outside organization on government and Secretary Carson's actions. FFRF explained how the requested information relates directly to the operations of government, as interpreted by the courts. Compl. ¶ 42.[11]

FFRF's letter devoted one and one-half pages to discussing how the disclosure will contribute to a greater understanding on the part of the public at large, detailing how the subject matter of its FOIA request and FFRF's opposition had received widespread media coverage. FFRF further explained that the requested information is not currently publicly available, and detailed the organization's channels of communication to reach millions of citizens. Compl. ¶ 43.

FFRF's appeal also discussed how disclosure of the requested documents will contribute significantly to the public's understanding of government activities or operations by aiding the public in understanding how top officials in the federal government are using (or misusing) federal resources for regular bible study meetings. As FFRF explained, there are few things more important and valuable than public oversight of our secular government. Finally, FFRF pointed

---

[10] HUD's letter is Exhibit 7 to D's Mem., Dkt. 13-9.
[11] Because HUD omitted this letter as an exhibit to its motion to dismiss, it is attached as Exhibit C.

out that the request form on HUD's Freedom of Information Act Public Access Website limits responses to 255 characters, which is an inadequate amount of space to fully address the four criteria HUD uses to determine fee waivers. Compl. ¶ 44.

By letter dated September 11, 2017, HUD advised FFRF that its appeal was denied. The sole ground HUD offered for the denial was its claim that FFRF was seeking documents that do not relate to HUD operations or activities. Compl. ¶ 45.[12]

On October 26, 2017, FFRF filed another FOIA request with HUD seeking: (1) correspondence, including emails to or from any representative of HUD, including Secretary Carson, regarding the "Revive Us 2" event Secretary Carson attended at the Museum of the Bible on October 24, 2017; and (2) Secretary Carson's daily schedule from October 24, 2017 (the "Revive Us 2 FOIA"). Compl. ¶ 46.[13] FFRF also requested a fee waiver for its Revive Us 2 FOIA because the subject of the request is a matter of concern to FFRF members, HUD personnel, and the public. Compl. ¶ 47.

One day later, on October 27, 2017, HUD advised FFRF that its fee waiver request was denied stating only that FFRF had failed to meet the agency's fee waiver criteria – the identical response it provided for the CM FOIA. Compl. ¶ 48.[14]

By letter dated December 8, 2017, FFRF appealed HUD's denial of its requested fee waiver. FFRF first noted that HUD had failed to provide a reason for the denial beyond the conclusory statement FFRF had failed to meet the applicable criteria. Compl. ¶ 49. FFRF then addressed each of the criteria, explaining in detail how its request satisfies each. First, FFRF explained how its request directly concerns Secretary Carson's operations and activities in his

---

[12] This letter is Exhibit 9 to D's Mem., Dkt. 13-11.
[13] This request is Exhibit 6 to D's Mem., Dkt. 13-8.
[14] HUD's letter is Exhibit 8 to D's Mem., Dkt. 13-10.

official capacity as a HUD representative. Second, FFRF explained that the requested documents will contribute significantly to public understanding of whether the government is complying with the Establishment Clause of the First Amendment, and contribute to greater understanding of HUD's involvement in the "Revive Us 2" event, including who attended, if staff were pressured into attending, and if staff time and government resources were spent organizing the event. Third, FFRF explained the significant public interest in the subject matter of its request, the fact that the requested information is not publicly available, and FFRF's numerous channels of communication to reach millions of citizens. Fourth, FFRF explained how disclosing the requested records will contribute significantly to the public's understanding of government activities or operations given the vital public interest in knowing if Secretary Carson is complying with the Constitution's requirements. Compl. ¶ 50.[15]

FFRF also noted in its appeal that the FOIA request form on HUD's Freedom of Information Act Public Access Website, which FFRF used to submit the Revive Us 2 FOIA (as well as its CM FOIA), does not provide enough space to those who request fee waivers to adequately explain their case. Compl. ¶ 51.

By letter dated January 9, 2018, HUD advised FFRF its appeal was denied. Despite FFRF's showing that it has several channels of communication to reach millions of citizens, HUD denied the requested fee waiver claiming FFRF had failed to mention how it would disseminate information to a broad audience outside of its organization. HUD also characterized FFRF's identification of the public interest to be served as conclusory and denied the fee waiver request on that basis as well. Compl. ¶ 52.[16]

---

[15] Because this letter is omitted as an exhibit to defendant's motion to dismiss it is attached as Exhibit D.
[16] HUD's letter is Exhibit 10 to D's Mem., Dkt. 13-12.

After plaintiffs filed the complaint in this action on January 18, 2018, HUD advised FFRF in a letter dated February 6, 2018 that it was granting in part FFRF's Revive Us 2 request by providing Secretary Carson's daily schedule from October 24, 2017, with personal details redacted. [17] Of note, the unredacted material on the enclosed calendar includes no entry for Secretary Carson's attendance at the "Revive Us 2" event at the Museum of the Bible on that date, despite the fact that a press release for the event touted Secretary Carson's attendance.[18] HUD also advised it was conducting an electronic search for records responsive to the first part of the request, promising "[a] final response letter, containing any additional responsive records . . . at the completion of the search." *Id.* To date, FFRF has received no additional documents or anything else purporting to be a "final response letter."

*Other Post-Filing Communications*

On March 15, 2018, HUD sent identical letters to FFRF concerning its CM FOIA and Revive Us 2 FOIA. Both letters stated that "upon further review . . . HUD has determined that no fee will be charged" because "[t]he search can be performed using HUD's automated e-discovery system and the results can be provided to you electronically[.]"[19] HUD sent identical letters to CREW on March 20, 2018 in the two CREW requests at issue.[20]

HUD has not followed up on these letters; to date neither plaintiff has received the results of the promised electronic searches. Further, HUD has provided no explanation of what its e-discovery system is, how it works, and whether it is capable of retrieving both electronically stored records and paper records.

---

[17] The letter and the enclosed document are attached as Exhibit E.
[18] *See* https://corporate.fathomevents.com/press/releases/2017/revive-us-2-release/.
[19] These letters are Exhibits 1 and 2 to D's Mem., Dkt. 13-3 and 13-4.
[20] These letters are Exhibits 3 and 4 to D's Mem., Dkt. 13-5 and 13-6.

*Other HUD Denials of Fee Waivers*

As set forth in the complaint, the public record documents that beyond CREW and FFRF, HUD has denied the requests of other public interest non-profit organizations for public interest fee waivers under similar circumstances. For example, on May 15, 2017, the American Society for the Prevention of Cruelty to Animals ("ASPCA") sued HUD under the FOIA for failing to grant the organization's fee waiver request. *The American Soc'y for the Prevention of Cruelty to Animals v. U.S. Dep't of Housing and Urban Development*, Civil No. 17-cv-00912 (RDM) (D.D.C.).[21] As outlined in ASPCA's complaint, that case involved a FOIA request the ASPCA filed with HUD for records related to HUD's Moving to Work demonstration program, and its policy of exempting housing authorities participating in the program from federal laws and regulations permitting residents to have pets. The ASPCA sought the information to educate its supporters and the public about federal housing policies that impact the availability of pet-friendly housing. Compl. ¶ 54.

HUD initially denied the requested public interest fee waiver on the ground that the ASPCA had asserted only "conclusory statements" and had failed to identify the public interest that disclosure of the requested documents would serve. Compl. ¶ 55. The ASPCA filed an administrative appeal from this denial that contained a multiple-page explanation for why its FOIA request met each criterion for entitlement to a public interest fee waiver. The ASPCA detailed the size of the organization, the depth and breadth of its staff's knowledge on issues of pet retention and public education, and the organization's wide range of public outlets. Compl. ¶ 56. Notwithstanding this detailed showing, HUD denied the appeal based on its assessment that the ASPCA had failed to show that disclosure of the requested documents would contribute to an

---

[21] The complaint in that case is attached as Exhibit F.

15

understanding of the subject by a reasonably broad audience. Subsequently, HUD sent the ASPCA a letter estimating the fee to be $7,862.40. Compl. ¶ 57.

After following up with HUD about the denial and acting on a recommendation from HUD FOIA staff, the ASPCA filed a new FOIA request seeking the same documents it had sought in its initial FOIA request. As with its first request, the ASPCA sought a fee waiver. This time, however, it made the fee waiver request separately in a document that included six numbered sections compromising 15 paragraphs of explanation as to why it satisfied each of the fee waiver criteria. Compl. ¶ 58. The following week, HUD again issued a cursory denial that did not address the ASPCA's showing, stating instead that the request did not address how the organization met any of the criteria. Compl. ¶ 59.

The ASPCA appealed this determination in a letter that included a six-part legal analysis structured specifically around HUD's FOIA regulations. While each criterion was discussed and applied in depth, the appeal devoted particular attention to explaining how the disclosure should contribute to the understanding of "a reasonably broad audience of persons interested in the subject." Compl. ¶ 60. In addition to providing an extensive factual basis to support its requested fee waiver, the ASPCA's appeal contained extensive citations to case law that contradicted HUD's analysis of the fee waiver issue. Compl. ¶ 61. Despite this exhaustive legal and factual showing, HUD denied the second appeal, claiming the ASPCA had failed to demonstrate it could "contribute to an understanding of the public at large," and challenging its intent or ability to distribute the requested information to a reasonably broad audience. Compl. ¶ 62. After the ASPCA filed its complaint, HUD admitted "that it should not have assessed any fee for Plaintiff's FOIA request," and promised to provide responsive records by June 16, 2017. Compl. ¶ 62.

Similarly, Public Citizen filed a complaint against HUD on December 4, 2017, challenging HUD's failure to grant Public Citizen a fee waiver based on HUD's assessment that the organization had failed to show that the public interest would be served by disclosure of the requested documents. *Public Citizen, Inc. v. U.S. Dep't of Housing and Urban Development*, Civil No. 17-2582 (RC) (D.D.C.). Compl. ¶ 64.[22] As with the plaintiffs here and the ASPCA, HUD refused to grant Public Citizen a public interest fee waiver for its request for documents related to the cost of travel by and personal security for Secretary Carson and former HUD Secretary Shaun Donovan for designated time periods. Compl. ¶ 65. There, as here, HUD issued its initial denial one day after receiving the request, Compl. ¶ 67, and ignored the explanation set forth in Public Citizen's appeal for how its request satisfies HUD's regulatory criteria for a fee waiver. Compl. ¶ 68. Only after Public Citizen filed suit did HUD agree to provide the requested documents at no charge.[23]

## ARGUMENT

### I.        Standard of Review.

When resolving a Rule 12(b)(1) motion, a court must accept all factual allegations in a complaint as true and draw all reasonable inferences in the plaintiff's favor. *Citizens for Responsibility & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 210 (D.D.C. 2009). Under Rule 12(b)(1), a court may consider the pleadings as supplemented "by undisputed facts evidenced in the record." *Nat'l Harbor GP, LLC v. Gov't of D.C.*, 121 F. Supp. 3d 11, 17 (D.D.C. 2015); *see also Boritz v. United States*, 685 F. Supp. 2d 113, 117 (D.D.C. 2010). This is

---

[22] The complaint in that case is attached as Exhibit G.
[23] *Public Citizen v. HUD*, No. 17-2582, (D.D.C.), Dkt. 10.

particularly true when deciding a motion to dismiss on ripeness grounds. *Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359, 366 (D.C. Cir. 2005).

By contrast, in ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court "may consider only the facts alleged in the complaint, any documents either attached or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. Dist. of Columbia*. 864 F.3d 671, 678 (D.C. Cir. 2017) (citation omitted). Further, the court must construe the complaint liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

## II.    Plaintiffs' Claims Are Not Moot.

Although plaintiffs have yet to receive all but one of their requested documents, HUD argues that Claims II, III, and IV, which challenge the denial of plaintiffs' requested fee waivers and the refusal to grant CREW news media status, are moot.[24] This is so, HUD claims, because the agency has taken the preliminary step of advising plaintiffs it will be using its "automated e-discovery system," which according to HUD means "the results can be provided to you electronically, so no fees are required[.]" D's Mem. 4. Contrary to HUD's arguments, however, those claims remain very much alive.

---

[24] HUD apparently concedes the pattern and practice claim set forth in Claim I is not moot, a concession compelled by Circuit precedent. In *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ("*Payne*"), the D.C. Circuit rejected the government's claim of mootness for a pattern and practice FOIA claim, reasoning "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* at 491 (emphasis in original) (citation omitted).

Significantly, as of the date of this filing, CREW has yet to receive a single document in response to its requests, and FFRF has received only one document HUD provided a month before notifying the parties of its plan to use its automated e-discovery system. Thus, the status of plaintiffs' requests stands in stark contrast to those in the cases on which HUD relies for its mootness claim. In *Hall v. CIA*, 437 F.3d 94 (D.C. Cir. 2006), the case on which HUD principally relies (D's Mem. 4-5), the court concluded the case was moot only after the agency had fully processed the request and released all the requested documents, stating that release was the triggering event. *Id.* at 98 ("Because the fee waiver claims are moot *due to the CIA's release of documents . . .*") (emphasis added). Similarly, in *Houser v. Church*, 271 F. Supp. 3d 197 (D.D.C. 2017) (cited in D's Mem.at 5), the court dismissed as moot the denial of the plaintiff's fee waiver only after the agency had fully processed the request and released to the plaintiff all responsive records at no cost. *Id.* at 204.

In both cases, contrary to HUD's characterization, the fee waiver claims were made moot by the agencies' *actual release* of the requested documents, not merely their stated intention to do so or, as HUD would have it, their "*decision* to release documents without payment." D's Mem. 5 (emphasis added). This is not simply a matter of semantics. Until plaintiffs have obtained all their requested documents, this Court cannot conclude with confidence that plaintiffs' complaint no longer presents a live controversy. Moreover, the wording of HUD's "decision" illustrates just how uncertain the outcome here is. HUD has claimed it no longer needs to consider the fee issue because it will be employing "HUD's automated e-discovery system[.]" D's Mem., Exhibits 1-4 (Dkt. 13-3, 13-4, 13-5, 13-6). But what HUD fails to say is precisely what this e-discovery tool is and what records systems it will search. All the requests at issue likely implicate paper records. FFRF seeks correspondence (Exhibits 5 and 6 to D's Mem.,

Dkt. 13-7, 13-8), a category that encompasses both electronic and paper records. Likewise, CREW seeks *all* communications between an enumerated list of individuals and Secretary Carson's wife and son, as well as all records reflecting meetings with these individuals, categories that as explicitly defined in CREW's request (Exhibit 11 to D's Mem, Dkt. 13-13) include paper records. CREW also seeks *all* records concerning the authorization of Secretary Carson's use of non-commercial aircraft (Exhibit 12 to D's Mem., Dkt. 13-14). Yet HUD has offered no evidence that the e-discovery system it intends to use will locate all potentially responsive records for the four requests at issue.

The requested relief further reinforces the conclusion the claims are far from moot. In their complaint plaintiffs specifically ask the Court to "[r]etain jurisdiction of this action to ensure no agency records are wrongfully withheld[.]" Compl., Requested Relief, ¶ 11. Thus, even if HUD eventually moves beyond its mere promise to use its e-discovery system, plaintiffs' claims will not be moot unless and until HUD can show it has not wrongfully withheld any requested document.

In sum, the mere promise by HUD to conduct some kind of search at no cost to plaintiffs, where the parameters of that search remain undefined and the agency has yet to carry it out, fails to render plaintiffs' claims moot. Accordingly, HUD's motion to dismiss claims II through IV must be denied.

### III. Claim I States a Claim That HUD Has Engaged in a Pattern and Practice of Improperly Denying Public Interest Fee Waivers to Public Interest Groups.

HUD also has moved to dismiss plaintiffs' pattern and practice claim (Claim I) for failure to state a claim based on its manufactured standard that the conduct in such claims must "rise to the level of extreme non-responsiveness[.]" D's Mem. 6. Plaintiffs' pattern and practice claim

stems from a repeated pattern of unlawful conduct by HUD, specifically its repeated refusal to grant fee waivers to non-profit groups, despite their detailed explanations for how they satisfy each of the regulatory fee waiver criteria. HUD's motion misses the mark both procedurally and substantively.

As a procedural matter, motions to dismiss for failure to state a claim are properly considered under Fed. R. Civ. P. 12(b)(6), and must be evaluated based only on "the facts alleged in the complaint, any documents either attached or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd*, 864 F.3d at 678. From those facts the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Here, while HUD does not refer explicitly to extra-record facts, it asks this Court to make certain inferences and assumptions untethered from any factual record before the Court. Specifically, HUD argues the examples set forth in the complaint represent mere "isolated instances" in which HUD "allegedly erred in making a discretionary determination under FOIA." D's Mem. 7. Completely absent, however, is any evidence that these examples represent "isolated instances."[25]

By contrast, the complaint spells out multiple instances in which HUD denied plaintiffs' requested fee waivers, and other examples involving two separate non-profit organizations – the ASPCA and Public Citizen – that sought and were denied fee waivers under comparable circumstances.[26] As detailed in the complaint, when HUD initially denied CREW a fee waiver for its Carson Family FOIA it "offered no rationale . . . or analysis of the reasons CREW

---

[25] This missing evidence also highlights why this issue should not be resolved within the context of a Rule 12(b)(6) motion.

[26] Plaintiffs are aware of at least one other non-profit public organization that has been denied a public interest fee waiver under comparable circumstances and anticipate discovery could elicit others.

provided to support its request." Compl. ¶ 21. Instead, HUD "offered the summary conclusion that CREW's request for a fee waiver 'is not in the public interest[.]'" *Id.* ¶ 21. On appeal, HUD characterized the detailed explanation CREW offered as "specula[tion]" that it rejected without further analysis. *Id.* ¶ 24. HUD accorded similar treatment to CREW's Carson Travel FOIA, initially denying it by form letter using language identical to that it used with the Carson Family FOIA. *Id.* ¶ 30. HUD again denied CREW's appeal, ignoring the detailed explanation CREW provided and explaining the denial in a single sentence that stated CREW's showing "does not satisfy the criteria and is conclusory." Compl. ¶ 36.

FFRF's two FOIAs at issue received similar treatment. HUD initially denied the requested fee waiver in the CM FOIA with no analysis, Compl. ¶ 41, and ignored the four-page, detailed appeal in issuing a denial based solely on the blatant mischaracterization of the CM FOIA as not seeking documents related to HUD operations or activities. *Id.* ¶¶ 42-45. In the same vein, HUD summarily and reflexively denied FFRF a fee waiver for its Revive Us 2 FOIA, *id.* ¶48, and ignored the detailed explanation FFRF offered in its appeal, which it characterized as "conclusory" to deny the appeal, *id.* ¶¶ 49-52.

For both plaintiffs and the other organizations detailed in the complaint, HUD initially denied the requested fee waivers shortly after receiving the requests, using boilerplate language, and failing to address each requester's showing as to why they are entitled to a fee waiver. Compl. ¶ 73. On appeal, HUD simply affirmed its initial denials, using broad conclusory terms that failed to address the detailed showings contained in each requester's appeal. *Id.* ¶ 74. And in each case, HUD denied the fee waivers where disclosure of the requested documents is likely to cast the agency or Secretary Carson in a negative light. *Id.* ¶ 76.

Far from "isolated instances," the conduct detailed in the complaint tells a story of an agency that reflexively and repeatedly denies public interest fee waivers notwithstanding the extensive, detailed justifications the requesters offer. The repeated denials are "not merely isolated mistakes by agency officials," but "a policy or practice of . . . [a] failure to abide by the terms of the FOIA[.]" *Muckrock, LLC v. CIA*, No. 14-cv-997 (KBJ), 2018 WL 1129713, at \*16 (D.D.C. Feb. 28, 2018) (citation omitted). As in *Payne*, this kind of abuse forms the very essence of a pattern and practice claim.

In *Payne*, the Air Force had an informal practice of initially refusing to fulfill the plaintiff's requests for copies of bid abstracts until after he had sought administrative review. Although in all cases the requester eventually got the requested information, the D.C. Circuit concluded he was nevertheless entitled to declaratory relief to remedy the harm caused by the delay alone, reasoning "stale information is of little value yet more costly than fresh information ought to be." 837 F.2d at 494. Here, too, HUD is improperly using the FOIA's fee waiver provisions "'offensively to hinder the release of non-exempt documents,'" *id.*, citing *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982), by forcing plaintiffs to file administrative appeals and litigation to protect and advance their interests in receiving the requested documents at no cost.

Further, that a fee waiver analysis requires HUD to consider "multiple factors as applied to the particular FOIA request at issue," D's Mem. 7, does not alter this conclusion. While the particulars of the four fee waiver requests at issue here may vary, they share a common core: each unquestionably involved a matter of significant public interest and seeks documents that would shed light on the actions of Secretary Carson and the agency he leads.[27] Nevertheless, in

---

[27] Subsequent revelations after the filing of this complaint reinforce this conclusion. For example, news reports have uncovered the role Secretary Carson's wife played in purchasing a $31,000 dining room set for HUD. *See, e.g.*, Jon Swaine and Ben Jacobs, Housing Official Says She Was Replaced for Rejecting Carson's Costly Office Redecoration, *The Guardian*, Feb. 27, 2018, *available at* https://www.theguardian.com/us-news/2018/feb/27/hud-

each case HUD concluded – based on virtually no analysis or support – that the detailed showings plaintiffs provided were insufficient. The agency's conduct reflects a pattern and practice of denying fee waivers without properly considering whether and how the requester's showing in each case meets the statutory and regulatory criteria for a public interest fee waiver.

Nor can HUD's fee waiver denials be excused as a proper exercise of the agency's discretion. As even HUD concedes "FOIA *requires* that an agency waive fees for processing a FOIA request" when the statutory requirements – that the requested information "is likely to contribute significantly to public understanding of the operations or activities of the government" and "is not primarily in the commercial interest of the requester"[28] – are met. Accordingly, the issue here, as in any fee waiver dispute, is whether CREW met the statutory standard for a fee waiver, not whether HUD properly exercised discretion in denying a waiver.

In the end, HUD falls back on a manufactured threshold it claims plaintiffs must satisfy: an unspecified "degree of abdication of duty" that HUD asserts is absent here simply because HUD responded to the fee waiver requests. D's Mem. 11. This construction, however, reflects a fundamental misunderstanding of plaintiffs' pattern and practice claim. That claim rests not on HUD's refusal to respond to plaintiffs' fee waiver requests, but on HUD's repeated refusal to even consider the detailed showing plaintiffs made in each case that disclosing the requested information was in the public interest.

The cases HUD cites do not hold to the contrary. For example, in *Muttit v. U.S. Cent. Command*, 813 F. Supp. 2d 221 (D.D.C. 2011) (cited in D's Mem. 11), the court found the plaintiff had stated a plausible pattern and practice claim against the State Department based on

---

ben-carson-office-redecoration-trump-appointee; Rene Marsh, ʻ$5,000 Will Not Even Buy a Decent Chair': HUD Staffer Files Complaint Over Ben Carson Office Redecoration, *CNN*, Feb. 27, 2018, *available at* https://www.cnn.com/2018/02/27/politics/ben-carson-office-furniture-whistleblower/index.html.
[28] D's Mem. 7, citing 5 U.S.C. § 552(a)(4)(A)(iii) (emphasis added).

the allegation that on two separate dates for five separate FOIA requests the agency failed to give

him an estimated completion date. 813 F. Supp. 2d at 230. Applying the pleading standard

recognized in *Iqbal*, the court concluded "these factually specific allegations of multiple FOIA

violations are sufficiently detailed to state a pattern or practice claim." *Id.* Here, too, HUD on

two separate occasions – initially and on appeal – refused to grant the plaintiffs a public interest

fee waiver for four separate FOIA requests. As spelled out in the complaint here, these "factually

specific allegations of multiple FOIA violations" state a pattern and practice claim. By contrast,

where the *Muttit* plaintiff's pattern and practice claim against the Department of the Treasury

rested on a single instance of the agency's failure to provide an estimated completion date, the

court concluded the allegation was "insufficient as a matter of law to state a claim for relief

based on a policy, pattern, or practice of violating FOIA." *Id.* at 231.[29] Here, however, plaintiffs

have provided evidence of multiple instances, making this case clearly distinguishable from the

Treasury Department request at issue in *Muttit*.

 Finally, while HUD has moved to dismiss Claim I and not for summary judgment, it

invites the Court to evaluate the merits of its fee waiver denials and conclude "HUD provided a

reasoned decision for denying those appeals." D's Mem. 9. But HUD offers the Court no

evidence to back up its claim that HUD's decisions on the FFRF requests "were tailored to the

specific requests at issue," D's Mem. 10, or that the public has no interest in learning of the role

Secretary Carson's family has played at HUD or the transportation costs he incurred for official

---

[29] Similarly, in *Cause of Action v. Eggleston*, 224 F. Supp. 3d 63 (D.D.C. 2016), the Court concluded the plaintiff had fallen "short of pleading any 'policy or practice' of violating FOIA" where its claim was based on a single instance, and the plaintiff conceded other delays could have been for reasons having nothing to do with the challenged White House memorandum requiring consultation. *Id.* at 71-72. HUD cites this case as grounds to ignore the evidence of how HUD has treated fee waiver requests for similarly situated groups that are not plaintiffs here. D's Mem. 11 n.2. Even if the Court ignores that evidence, however, the multiple occasions on which HUD denied plaintiffs' multiple fee waiver requests provide a proper factual predicate for plaintiffs' pattern and practice claim.

travel. *Id.* On their face, the four requests at issue concern matters of public interest, a conclusion reinforced by more recent revelations about Secretary Carson's family and his patent disregard for the governing regulations and norms. HUD's half-hearted defense of its fee waiver decisions provides no basis to dismiss plaintiffs' pattern and practice claim.

For all these reasons, plaintiffs have properly stated a pattern and practice claim that is not subject to dismissal under Rule 12(b)(6).

## <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to dismiss should be denied.

Respectfully submitted,

  */s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and Ethics
    in Washington
455 Massachusetts Ave., N.W.
Washington, D.C.  20001
Phone: (202) 408-5565
Facsimile: (202) 588-5020

*Attorney for Citizens for Responsibility and Ethics in Washington*

Patrick C. Elliott
Freedom From Religion Foundation, Inc.
10 N. Henry St.
Madison, WI 53703
Phone: (608) 256-8900
Facsimile: (608) 204-0422

Dated:  April 30, 2018                 *Attorney for Freedom From Religion Foundation*