# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                                                              |                                       |
|------------------------------------------------------------------------------|---------------------------------------|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, et al.,  *Plaintiffs*, v.  U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,  *Defendant*. | Civil Action No. 1:18-cv-00114 (CJN) |

## MEMORANDUM OPINION

Plaintiffs Citizens for Responsibility and Ethics in Washington ("CREW") and the Freedom from Religion Foundation ("FFRF") filed multiple, separate requests with the Department of Housing and Urban Development ("HUD") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The requests sought information that Plaintiffs suggest might reflect poorly on the Department's head, Secretary Ben Carson. In addition to the document requests, both organizations sought a waiver of the fees the Department typically charges FOIA requesters. HUD denied the fee waivers and requests for reconsideration.

Plaintiffs then jointly filed this action, alleging both improper denial of fee waivers in those instances and an illegal pattern or practice of denying waivers more broadly. *See generally* Compl., ECF No.1. HUD promptly reevaluated its decision and waived fees for the specific requests. HUD now moves to dismiss the Complaints, arguing that the challenges to individual fee-waiver denials are moot and that the policy-or-practice count fails to state a claim for relief. *See generally* Def.'s Mem. in Supp. of Mot. to Dismiss ("Mot."), ECF No. 23-1. The Court

1

agrees that the as-applied challenges are moot and grants HUD's Motion to Dismiss in part, but it denies the Motion as to the policy-or-practice claim.

## I.     Background

Plaintiffs are both tax-exempt, non-profit organizations. Compl. ¶¶ 4, 6. CREW seeks to promote governmental transparency through "a combination of research, litigation, and advocacy," relying in part on "government records made available to it under . . . FOIA." *Id.* ¶ 4. FFRF "advocates for the separation of church and state," using "FOIA to access records necessary to advance its mission." *Id.* ¶ 6. There are five FOIA requests at issue in this case: three by CREW and two by FFRF.

### A.     CREW's Initial FOIA Requests

CREW filed its first request on August 25, 2017, seeking records relating to the reported involvement of Secretary Carson's spouse and his son, B.J., in the Department's internal affairs. *Id.* ¶ 18; CREW Ltr. of Aug. 25, 2017 ("CREW Request 1"), ECF No. 23-13. CREW requested several categories of documents, including communications and calendar entries between or involving several senior HUD officials and either Mrs. Carson or B.J. Carson. Compl. ¶ 18. CREW submitted a second, unrelated FOIA request on September 20, 2017, seeking "records concerning authorization for and the costs of Secretary Carson's use of non-commercial aircraft for any official travel" and budgetary records showing the amounts of money earmarked for the Secretary's travel in 2017 and 2018, as well as comparable figures for 2016. *Id.* ¶ 27; CREW Ltr. of Sep. 20, 2017 ("CREW Request 2"), ECF No. 24-3, at 6–8.

Both submissions included detailed requests for fee waivers under 5 U.S.C. § 552(a)(4)(A) and 24 C.F.R. § 15.106(k) based on two grounds. Compl. ¶¶ 19–20, 28–29. First, CREW argued that the requests satisfied the statutory and regulatory criteria for waivers

because they "concern[ed] the operation of the federal government," would "contribute to a better understanding of relevant government procedures . . . in a significant way," and were "primarily and fundamentally . . . for non-commercial purposes." CREW Request 1 at 2 (citing 5 U.S.C. § 552(a)(4)(A)); *see also* CREW Request 2 at 6 (same). Second, CREW asserted that it was exempt from the payment of fees as a member of the news media. CREW Request 1 at 2 (citing 5 U.S.C. § 552(a)(4)(A)(ii)(II)); CREW Request 2 at 7 (same).

HUD acknowledged both requests within a few days of receiving them and assigned each one a FOIA Control Number. *See* HUD Ltr. of Aug. 31, 2017 ("HUD Resp. to CREW Request 1"), ECF No. 23-15; HUD Ltr. of Sep. 21, 2017 ("HUD Resp. to CREW Request 2"), ECF No. 23-16. HUD also denied both fee waiver requests. Using identical, boilerplate language laying out the statutory factors for fee waivers, HUD concluded that CREW's justifications were mere conclusory statements and asserted that CREW's requests for documents were not "in the public interest." HUD Resp. to CREW 1 at 1–2; HUD Resp. to CREW 2 at 1–2. The responses made no mention of CREW's claimed media status. HUD Resp. to CREW Request 1 at 1–2; HUD Resp. to CREW Request 2 at 1–2. CREW timely appealed both denials through the proper administrative channels, providing more detailed descriptions of its work and legal justifications for the waiver requests. *See* CREW Ltr. of Sep. 6, 2017 ("CREW Appeal 1"), ECF No. 24-2, at 2–4; CREW Ltr. of Sep. 21, 2017 ("CREW Appeal 2"), ECF No. 24-3, at 2–4. HUD affirmed both denials, this time providing slightly more substantive grounds for its decisions. HUD Ltr. of Oct. 6, 2017 ("HUD Resp. to CREW Appeal 1"), ECF No. 23-17, at 2; HUD Ltr. of Oct. 24, 2017 ("HUD Resp. to CREW Appeal 2"), ECF No. 23-18, at 2. Both letters declined to address whether CREW was entitled to news media status, stating that because HUD had not yet made

an initial determination on that question, the issue was "not ripe for appeal." HUD Resp. to CREW Appeal 1 at 2; HUD Resp. to CREW Appeal 2 at 2.

### B. FFRF's FOIA Requests

Around the same time, FFRF was engaged in its own quest for HUD's internal records. It filed its first request on August 7, 2017. Compl. ¶ 39; FFRF Ltr. of Aug. 7, 2017 ("FFRF Request 1"), ECF No. 23-7. FFRF sought all correspondence between HUD personnel and officials from Capitol Ministries, a Christian group that works with political leaders, as well as any internal communications and calendar entries related to weekly Bible studies that Secretary Carson allegedly arranged for his fellow Cabinet members at the White House. Compl. ¶ 39. The request included a fee waiver petition with a short justification statement noting that FFRF is a non-profit organization and asserting that production of the records was in the public interest. *Id.* ¶ 40.

FFRF submitted its second request on October 26, 2017. Compl. ¶ 46; FFRF Ltr. of Oct. 26, 2017 ("FFRF Request 2"), ECF No. 23-8. It sought records regarding Secretary Carson's alleged appearance at an event entitled "Revive Us 2," hosted by the Museum of the Bible in Washington. Compl. ¶ 46. Just like the first request, this request also asked for a fee waiver and included the same short justification statement. *Id.* ¶ 47.

HUD responded within 24 hours of each request. Compl. ¶¶ 41, 48; HUD Ltr. of Aug. 7, 2017 ("HUD Resp. to FFRF Request 1"), ECF No. 23-9; HUD Ltr. of Oct. 27, 2017 ("HUD Resp. to FFRF Request 2"), ECF No. 23-10. It included the same boilerplate language contained in the responses to the CREW requests, briefly reviewed FFRF's grounds for fee waivers, and summarily denied the requests. HUD Resp. to FFRF Request 1 at 1–2; HUD Resp. to FFRF Request 2 at 1–2. FFRF appealed both decisions, submitting longer letters with more substantive

justification statements outlining how its requests fulfilled each of the statutory and regulatory criteria for fee waivers. Compl. ¶¶ 42–45, 49–51; FFRF Ltr. of Dec. 8, 2017 ("FFRF Appeal 2"), ECF No. 24-4 at 2–5.[1] HUD denied the first request on the grounds that Secretary Carson's participation in Bible studies did not relate to HUD's operations, thereby failing to satisfy the statutory criteria for a fee waiver. HUD Ltr. of Sep. 11, 2017 ("HUD Resp. to FFRF Appeal 1"), ECF No. 23-11, at 2. It denied the second appeal on the grounds that FFRF failed to explain how it would disseminate the information to the general public (rather than solely to its own members) and that the requested information was not in the public interest. HUD Ltr. of Jan. 9, 2018 ("HUD Resp. to FFRF Appeal 2"), ECF No. 23-12.

### C.    Litigation

On January 28, 2018, CREW and FFRF jointly filed a Complaint alleging (I) an impermissible pattern or practice of denying fee waivers; (II) improper denials of CREW's fee waiver requests; (III) improper denials of FFRF's fee waiver requests; and (IV) improper denials of CREW's request for news media status. Compl. ¶¶ 71–93. The Complaint sought injunctive and declaratory relief, including an order to grant fee waivers for the requests at issue. *Id.* at 21–22. Two months later, HUD suddenly reversed itself on its own initiative and waived the fees for CREW's and FFRF's requests. Without commenting on the requests' merits, HUD determined that "[t]he search[es] can be performed using HUD's automated e-discovery system and the results can be provided . . . electronically, so no fees are required for search time, document review, or duplication." HUD Ltr. of Mar. 15, 2018 ("FFRF Fee Waiver 1"), ECF No. 23-3; HUD Ltr. of Mar. 15, 2018 ("FFRF Fee Waiver 2"), ECF No. 23-4; HUD Ltr. of Mar. 20,

---

[1] A copy of FFRF's appeal of its first request seems to have been omitted from the record inadvertently.

5

2018 ("CREW Fee Waiver 1"), ECF No. 23-5; HUD Ltr. of Mar. 20, 2018 ("CREW Fee Waiver 2"), ECF No. 23-6. HUD then moved to dismiss, arguing that the challenges to individual fee waiver determinations were moot and that the policy-or-practice count failed to state a claim for relief. *See* Def.'s Original Mot. to Dismiss, ECF No. 13.

While that motion was pending, CREW filed a third FOIA request seeking copies of Secretary Carson's schedule for three days in July. CREW Ltr. of Oct. 1, 2018 ("CREW Request 3"), ECF No. 23-19, at 1–2. As before, CREW sought a fee waiver, asserting it satisfied the same public interest and news media criteria. *Id.* Unsurprisingly, HUD replied the following day and denied the fee waiver with the same boilerplate language it used in earlier denials (and making no mention of automated e-discovery). HUD Ltr. of Oct. 2, 2018 ("HUD Resp. to CREW Request 3"), ECF No. 23-20. CREW again appealed with a more substantive justification statement, CREW Ltr. of Oct. 2, 2018 ("CREW Appeal 3"), ECF No. 24-7 at 2–4, and HUD again denied the appeal, HUD Ltr. of Nov. 6, 2018 ("HUD Resp. to CREW Appeal 3"), ECF No. 23-21. As before, HUD refrained from deciding whether CREW qualified as a member of the news media. *Id.* at 2.

CREW filed a second Complaint, renewing its policy-or-practice claim and bringing separate claims for improper denial of a fee waiver and news media status as to its third FOIA request. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Housing & Urban Dev.*, No. 1:18-cv-2737, Complaint ¶¶ 82–102, ECF No. 1 (D.D.C. Nov 26, 2018). The Court consolidated the two cases, vacated the pending Motion to Dismiss, and ordered new briefing. Min. Order (Jan. 9, 2019). On March 1, 2019, HUD again determined that CREW's third request could be facilitated through the use of automated e-discovery and waived the associated fee. HUD Ltr. of March 1, 2019 ("CREW Fee Waiver 3"), ECF No. 23-22. It then renewed its

motion to dismiss on substantially the same grounds as before, arguing that the challenges to individual denials of fee waivers were moot and that the policy-or-practice count failed to state a claim. *See generally* Mot. The Court analyzes the consolidated Complaints together.

## II. Legal Standard

HUD moves to dismiss the as-applied counts as moot. *See* Mot. at 4–6. Such a motion "is properly brought under [Federal Rule of Civil Procedure] 12(b)(1) because mootness itself deprives the court of jurisdiction." *Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation omitted). "The rule against deciding moot cases forbids federal courts from rendering advisory opinions or deciding questions that cannot affect the rights of litigants in the case before them." *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (internal quotation omitted). When plaintiffs have already "obtained everything that [they] could recover by a judgment of this court in [their] favor," there is nothing left to do but dismiss the case. *Id.* (internal quotation omitted).

"When evaluating a motion to dismiss, the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (internal quotations and citations omitted). "But because the Court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority, the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* (internal quotations and citations omitted).

HUD also argues that the Complaints fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); Mot. at 6–16. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the Court accepts all well pleaded facts in the Complaints as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 554–55 (internal quotations and citations omitted). The claim to relief must be "plausible on its face," enough to "nudge[ the] claims across the line from conceivable to plausible." *Id.* at 570.

### III.  Analysis

#### 1.  Statutory and Regulatory Scheme

FOIA permits agencies to charge reasonable fees to cover costs associated with processing and producing records, but it differentiates between types of requesters in determining what costs agencies must bear themselves. 5 U.S.C. § 552(a)(4)(A). "When, as here, records are not requested for commercial use, an agency may only charge reasonable fees 'for document search and duplication.'" *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 75 (D.C. Cir. 2018) (quoting § 552(a)(4)(A)(ii)(III)). "And FOIA directs that the fee be waived 'if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.'" *Id.* (quoting § 552(a)(4)(A)(iii)). "Fee-waiver applications are to be liberally construed in favor of requesters." *Id.* (internal quotation omitted).

As FOIA directs, HUD has published implementing regulations setting out the fee schedule and interpreting the statutory language for requests directed its way. *See* 24 C.F.R. § 15.106. HUD does not charge any fees for requests by news media organizations, § 15.106(d)(1), and it has its own criteria to evaluate whether a request is "in the public interest," § 15.106(k). HUD used those criteria to determine that CREW's and FFRF's fee-waiver requests did not qualify for the public-interest exemption. *See, e.g.*, HUD Resp. to CREW Appeal 3 at 1–2.

### 2. Plaintiffs' As-Applied Challenges are Moot

In arguing that Counts II–IV of the original Complaint (and the corresponding counts in the second Complaint[2]) are now moot, HUD advocates for a narrow reading of the Complaints. Count II alleges that HUD improperly denied CREW's requested fee waivers. Compl. ¶¶ 81–84. Count III makes the same allegations as to FFRF's requests. *Id.* ¶¶ 85–88. Count IV alleges that HUD improperly denied CREW recognition as a member of the news media. *Id.* ¶¶ 89–93. All three counts seek injunctive and declaratory relief to obtain fee waivers as to the specific requests. *Id.* ¶¶ 84, 88, 93. In HUD's view, those counts demand that HUD waive the fees at issue for those individual requests, and HUD has done exactly that. It contends that there is therefore nothing left to litigate on those claims. *See, e.g.*, *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–91 (D.C. Cir. 1986) (agreeing that challenge to fee waiver denials was mooted by subsequent waiver of fees but permitting facial challenge to the fee waiver guidelines to go forward).

---

[2] Counts I–III of the second Complaint are nearly identical to Counts I, II, and IV of the original Complaint; they merely add additional factual bases for the same legal arguments. For simplicity's sake, the Court's references to Counts I–IV include analysis of the corresponding counts in the second Complaint.

That was essentially what happened in *Hall v. CIA*. Among other claims, the plaintiff sought a fee waiver on his FOIA requests to the CIA. 437 F.3d at 97. Although the district court determined that Hall was not entitled to the waivers, the CIA produced all responsive documents and waived the fees on its own accord while the case was pending on appeal. *Id.* at 98. That was enough to moot the case, and the Court of Appeals thus lacked jurisdiction to decide whether Hall was entitled to a fee waiver as a matter of law. *Id.* at 99–100.

Here, as in *Hall*, after CREW and FFRF went to court, HUD "use[d] its administrative discretion to voluntarily" waive the fees. *Id.* at 98. Although HUD never changed its position as to whether the Plaintiffs are legally entitled to such waivers, it argues that a judicial decision on Counts II–IV "cannot affect the rights of the litigants in the case" at bar. *Id.* at 99 (internal quotation omitted).

Naturally, Plaintiffs take issue with such a narrow reading of the Complaints. Although HUD has indicated its intent to waive the fees and produce the documents, it has not yet completed production. In supplemental briefing, the Parties reported that three of the five FOIA requests are still in progress and that HUD anticipates the production will continue through at least February 2020. *See* Joint Status Report (Oct. 21, 2019), ECF No. 28, at 2–3. Plaintiffs contend that fact distinguishes this case from *Hall*, in which the government both waived the fees *and* produced all requested documents. 437 F.3d at 98; *accord Bayala v. U.S. Dep't of Homeland Sec., Office of Gen. Counsel*, 827 F.3d 31, 34 (D.C. Cir. 2016) ("[O]nce all the documents are released to the requesting party, there is no longer any case or controversy."). Plaintiffs urge the Court to construe the counts alleging an improper denial of fee waivers as also encompassing any potential future FOIA violation HUD may commit while processing these

requests, such as improperly exempting material or unreasonably delaying the production of documents.

But there is less to this dispute than the Parties contend. HUD is correct that the plain language of the counts alleges no FOIA violation beyond a wrongful denial of fees and a failure to address CREW's claimed news media status. The Complaint does not allege a failure to produce documents in a timely fashion or improper withholding of documents under one of FOIA's permitted exemptions. For that reason and because HUD has waived fees for the requests, Counts II–IV are moot. If HUD were to change its mind and charge fees for these requests, Plaintiffs would be entitled to resurrect their claims. Moreover, to the extent that Count IV seeks a judicial declaration that CREW is entitled to news media status in all future FOIA requests (whether as to HUD or other agencies, the Complaint is unclear), that request either is outside the scope of the Complaint or overlaps with the illegal policy-or-practice allegation contained in Count I. There is no reason to leave Count IV in place on those bases. Finally, in its prayer for relief, the Complaint urges the Court to "[r]etain jurisdiction of this action to ensure no agency records are wrongfully withheld." Compl. at 22. Because the Court denies the Motion to Dismiss as to Count I, it retains jurisdiction over the controversy. Plaintiffs will be able to seek leave to amend their Complaint if some dispute arises during production.

### 3. Plaintiffs Have Stated a Valid "Policy-or-Practice" Claim

The plaintiff in *Hall* tried to avoid the question of mootness by arguing that the denial of fee waivers was "capable of repetition, yet evading review." 437 F.3d at 99. The Court of Appeals disagreed, holding that "[d]enials of fee waivers do not seem inherently of such short duration that they cannot ordinarily be fully litigated before their cessation." *Id.*; *see also Cause of Action Inst. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 66, 77–79 (D.D.C. 2017) ("[I]t is unclear

whether . . . [that] doctrine applies to FOIA disclosures, given the general duration of the proceedings in such litigation.").

But that does not mean that government agencies may choose not to comply with FOIA and force every request into court, then moot every case by voluntarily complying thereafter. Instead, the D.C. Circuit has recognized the viability of a challenge to an agency's FOIA policy or practice. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). It has held that "even though a party may have obtained relief as to a *specific request* . . . , this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* "So long as an agency's refusal to supply information evidences a policy or practice of . . . some . . . failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit." *Id.*

The Court of Appeals built on *Payne* last year in *Judicial Watch, Inc. v. U.S. Department of Homeland Security*, 895 F.3d 770 (D.C. Cir. 2018). There, the plaintiff alleged that the United States Secret Service had an internal policy of declining to respond to FOIA requests within the statutory 20-day deadline and ignoring them until the requester filed a lawsuit; then it would produce the documents, moot the controversy, and avoid an adverse judgment in litigation. *Id.* at 776. Judicial Watch filed nineteen requests in a three-year period, leading to five lawsuits that all became moot before any court could rule on the denials. *Id.* at 773. Recognizing that the allegations were enough to state a claim under *Payne*, the court held that a "plaintiff must allege a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future." *Id.* at 780. It held that there is no requirement to

allege "egregious, intentional agency conduct," instead requiring only that a complaint allege "'some . . . failure to abide by the terms of the FOIA' that could be the basis for finding the agency has an unlawful practice a policy." *Id.* at 781–82 (quoting *Payne*, 837 F.2d at 491).

District courts have reached a consensus on several points. First, for a claim to go forward, a plaintiff need not "point to a regulation that establishes the policy [or practice], [and] the agency [need not] concede the policy's existence." *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 131 (D.D.C. 2018). Second (and relatedly), the alleged policy may be informal and need not have been published or written anywhere. *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011). Third, a plaintiff cannot state a valid claim arising out of a single incident—there must be a pattern—but a single plaintiff does not need extrinsic evidence from the agency's treatment of other requesters. *Id.* at 231 (holding lack of response to two separate requests for estimated completion dates in five outstanding requests was enough under *Payne*); *see also Muckrock*, 300 F. Supp. 3d at 131 (five non-responsive requests enough); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d. 63, 72 (D.D.C. 2016) (one delayed request not enough). Finally, the plaintiff must allege agency conduct consistent with the alleged illegal policy or practice. *See Scudder v. CIA*, 281 F. Supp. 3d 124, 127 (D.D.C. 2017) (dismissing complaint that acknowledged that the agency sometimes acted appropriately).

Here, Count I states a claim under *Payne*. CREW and FFRF allege that HUD "is engaged in a policy and practice of violating the FOIA's fee waiver provisions by intentionally refusing to grant fee waivers to non-profit, public interest organizations that satisfy all the statutory and regulatory criteria . . . where disclosure of the requested documents is likely to cast the agency or HUD Secretary Ben Carson in a negative light." Compl. ¶¶ 72, 76 (internal citation omitted). They contend that HUD "makes an initial decision to deny requested public

13

interest fee waivers from non-profit requesters shortly after receiving the requests, using boilerplate language and failing to address" the requesters' justifications, then it "affirms these denials on appeal in broad conclusory terms that fail to address" the requesters' subsequent detailed justification statements. *Id.* ¶¶ 73–74. They assert that HUD's "actions have resulted, and will continue to result, in the untimely access to documents to which the plaintiffs and the public are entitled" and "will continue to harm plaintiffs by requiring them to either pay processing fees notwithstanding their statutory entitlement to a fee waiver or incur the costs and delayed associated with litigating their entitlement." *Id.* ¶¶ 77–78. To support those allegations, Plaintiffs have pointed to five separate FOIA requests by two unrelated organizations that encountered similar responses consistent with the alleged policy. That claim fits squarely within the contours of *Judicial Watch*—it would even likely satisfy the criteria outlined in Judge Srinivasan's dissent. *See* 895 F.3d at 799 (Srinivasan, J., dissenting) (arguing that a consistent failure to respond to FOIA requests within the default 20-day timeline is not actionable under *Payne* but that "if an agency has a practice of unlawfully withholding the disclosure of responsive records . . . [,] it will be subject to an injunction barring the practice." (citing *Payne*, 837 F.2d at 490–92)).

HUD's Motion to Dismiss suffers from several flaws. First, it points to media stories about CREW's funding to suggest that CREW might not have suffered significant injury from the denials. *See* Mot. at 9. It also provides internal data about the percentage of fee waiver requests HUD has granted in recent years to suggest that Plaintiffs' policy-or-practice allegations are false. *Id.* at 9–10. But those materials are better suited to the summary judgment stage, not to a motion to dismiss. At this point, the Court must accept the allegations in the Complaint and

attached documents (such as the correspondence between the Parties) as true.  *Am. Nat'l. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).[3]

Second, HUD argues that because the regulations create a list of factors it must weigh in deciding whether to grant a fee waiver, that decision is committed to the agency's discretion and cannot be the subject of a policy-or-practice claim.  *See, e.g.*, *Judicial Watch*, 895 F.3d at 780 (holding that a pattern of violating a strict, statutory 20-day response deadline states a claim); *Del Monte Fresh Produce N.A. v. United States*, 706 F. Supp. 2d 116, 120 (D.D.C. 2010) ("*Payne Enterprises* regards the repeated denial of [FOIA] requests based on the invocation of inapplicable statutory exemptions rather than delay of an action over which the agency had discretion.").  But once again, that is a question for summary judgment.  It may be the case that HUD engages in a good faith effort to exercise its discretion over fee waivers; or perhaps it has a practice of denying every waiver request in the hope that requesters will abandon their efforts.  But on a motion to dismiss, the question is merely whether the Complaint adequately alleges a persistent, willful policy of violating FOIA's commands.  It does.[4]

Third, HUD points to language in *Judicial Watch* to suggest that policy-or-practice claims are limited to undue delays in the production of documents and cannot encompass a

---

[3] HUD argues that portions of the Complaint describing similar experiences by other non-profit organizations, at issue in separate litigation, are not properly before the Court.  *See* Mot. at 15 (citing Compl. ¶¶ 53–70).  Because the Court did not rely on those portions of the Complaint to reach its decision, it declines to reach the question of whether they were properly pleaded.

[4] Most of the cases to which HUD cites dealt with summary judgment, so they do not necessarily support dismissal of the Complaint.  And *Del Monte*, to which HUD cites repeatedly, was an APA challenge to the FDA's alleged failure to conduct regulatory inspections of food processing plants.  706 F. Supp. 2d at 117–18.  It declined to follow *Payne* because that case was limited to the context of FOIA.  *Id.* at 120.  It also speculated that *Payne* was no longer good law because of subsequent developments in the doctrine of standing as articulated by the Supreme Court, *id.*, but *Judicial Watch*—which, of course, is binding—confirmed *Payne's* continuing validity.  895 F.3d at 778.

dispute over fee waivers. *See* 895 F.3d at 780 ("[T]he plaintiff must allege a pattern of prolonged delay amount to a persistent failure to adhere to FOIA's requirements . . . ."). But the statutory violation at issue in that case *was* undue delay. Nothing in *Judicial Watch* or in FOIA's text suggests that plaintiffs cannot allege a policy or practice of violating some other aspect of FOIA. *See, e.g.*, *Muttitt*, 813 F. Supp. 2d at 230 (recognizing a policy-or-practice claim for alleged failure to provide estimated completion dates for production as required under FOIA).

### IV. Conclusion

Although the question of whether CREW and FFRF were entitled to fee waivers is no longer live, Plaintiffs have sufficiently alleged that, as a matter of policy or practice, HUD denies such waivers without giving them adequate consideration, particularly when the request's subject may reflect poorly on the agency or its senior officials.

For the foregoing reasons, HUD's Motion to Dismiss is **DENIED** as to Count I and **GRANTED** as to Counts II, III, and IV. Those counts are **DISMISSED** without prejudice as moot. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: November 25, 2019

CARL J. NICHOLS
United States District Judge